UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE LACY,<br><br>            Plaintiff,<br><br>     v.<br><br>TURNER,<br><br>            Defendant. | Case No.   1:23-cv-01763-NODJ-EPG<br><br>ORDER FOR PLAINTIFF TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED<br><br>(ECF No. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ISSUE <u>ONLY</u> *PRO SE* INFORMATIONAL ORDER<br><br><u>THIRTY-DAY DEADLLINE</u> |

On December 26, 2023, Plaintiff Janice Lacy, proceeding *pro se*, filed this civil action. (ECF No. 1). Generally, Plaintiff seeks a temporary restraining order prohibiting Defendant, Sergeant Turner, from enforcing a California criminal protective order that requires Plaintiff to stay away from a property in Yokuts Valley, California. Because Plaintiff's complaint implicates two doctrines—*Younger* abstention and *Rooker-Feldman*[1]—that prevent Federal courts from interfering with state court matters under certain circumstances, the Court will order Plaintiff to file a response within thirty days of the issuance of this order, explaining why this case should not be dismissed.

\\\

---

[1] *See Younger v. Harris*, 401 U.S. 37 (1971); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

1

## I.    SUMMARY OF THE COMPLAINT

Plaintiff asserts that she is "the legal spouse of LeeAnn E. Lacy, who died in a house fire at 33919 Otter Lane, Squaw Valley aka Yokuts Valley, CA 93675."[2] Plaintiff states that there were CPOs, which the Court understands to mean criminal protective orders, "on file in both directions." Plaintiff asserts that it is a legal fact that a CPO dissolves upon death.

On December 21, 2023, Plaintiff was woken up and forced to leave the Otter Lane property. She later found out that this was done at the direction of Defendant Turner. Plaintiff called a detective, who told her that Turner said "there is an RO on the property," which the Court understands to mean a restraining order. Plaintiff claims that "[t]he Sheriff is legally wrong to enforce a deceased person's restraining order." And she states that "[t]heir legal advice is flawed and I cannot even go on calendar in the criminal case."

Plaintiff attached a variety of documents to the complaint, including a citizen complaint form, reporting that Defendant told Plaintiff "that he and his deputies will continue to enforce deceased spouse LeeAnn E. Lacy's DVRO," which the Court understands to mean a domestic violence restraining order. The form also states, "I want a court to replace what I am losing in another jurisdiction and have false arrests removed." Plaintiff also attaches case information from the Fresno County Superior Court website regarding criminal charges against her, which include "[r]esisting [e]xecutive [o]fficer" and "[b]attery [o]n peace [o]fficer."

The Court takes judicial notice of a different charge—for domestic violence in Case Number F21900281—against Plaintiff on the Fresno County Superior Court website (https://www.fresno.courts.ca.gov/online-services/case-information). *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (noting that a court can take judicial notice of another court's opinion, but not for the truth of the facts therein, but for the existence of the opinion). Notably, the summary of events for this domestic violence case indicates that a criminal protective order was issued and that Plaintiff was given probation. Under Cal. Penal Code § 1203.097(a)(2), probation for domestic violence requires as a term of probation "[a] criminal court protective order protecting the victim from further acts of violence, threats, stalking, sexual

---

[2] For readability, minor alterations have been made to some of Plaintiff's quotations without indicating each change.

2

abuse, and harassment, and, if appropriate, containing residence exclusion or stay-away conditions."

## II. DISCUSSION

### A. Legal Standards

At issue here are two doctrines that, under certain circumstances, prevent a Federal court from interfering with state court proceedings. The first is a doctrine called *Younger* abstention, which is rooted in the "desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971). Thus, "[a]bsent extraordinary circumstances, interests of comity and federalism instruct federal courts to abstain from exercising our jurisdiction in certain circumstances when asked to enjoin ongoing state enforcement proceedings." *Page v. King*, 932 F.3d 898, 901 (9th Cir. 2019) (alterations, citation, and internal quotation marks omitted).

> *Younger* abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding.

*Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (alterations, citation, and internal quotation marks omitted).

Typically, dismissal is required for *Younger* abstention. *Aiona v. Judiciary of State of Hawaii*, 17 F.3d 1244, 1248 (9th Cir. 1994) (holding that, when abstaining under *Younger*, "a district court must dismiss the federal action . . . [and] there is no discretion to grant injunctive relief") (citation and internal quotation marks omitted). But "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed." *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004). Lastly, "Federal courts will not abstain under *Younger* in extraordinary circumstances where irreparable injury can be shown." *Page*, 932 F.3d at 902 (citation and internal quotation marks omitted). "[B]ad faith and harassment" are "the usual prerequisites" to show "the necessary irreparable injury." *Younger*, 401 U.S. at 53.

The next doctrine is known as the *Rooker-Feldman* doctrine, which "takes its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362

3

(1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). Under this doctrine, lower federal courts lack subject matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting [federal] district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The purpose of the doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence being called upon to review the state court decision.'" *Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (citing *Feldman*, 460 U.S. at 482 n.16).

**B.   Analysis**

It appears from the face of the complaint that Plaintiff is challenging actions related to either ongoing or past California state court matters. Specifically, Plaintiff has a California criminal protective order against her, which likely stems from her criminal domestic violence case, which requires her to stay away from the Otter Lane property. And Plaintiff seeks an order prohibiting enforcement of the criminal protective order, which has the potential to interfere with ongoing or concluded state court matters.

Notably, in analogous circumstances, courts have concluded that plaintiffs were improperly trying to obtain Federal court intervention in state court matters. *See Malberg v. McCracken*, No. 5:22-CV-01713-EJD, 2023 WL 2769095, at *4 (N.D. Cal. Mar. 31, 2023) ("For the purposes of the second *Rooker-Feldman* element, it is difficult to envision a clearer example of a plaintiff attempting to blatantly end run an adverse state court judgment. Several federal courts in California have also used the *Rooker-Feldman* doctrine to dismiss complaints with remarkably similar allegations challenging California domestic violence restraining orders."); *Ervin v. California*, No. 3:18-CV-00442-GPC-RBB, 2018 WL 3375058, at *4 (S.D. Cal. July 11, 2018) ("Essentially, plaintiff is asking this court to overturn the state court's order issuing the protective order and the gun prohibition, making this a de facto appeal of the state court order that is prohibited under the *Rooker-Feldman* doctrine."); *Steinmetz v. Steinmetz*, No. CIV 08-0629

JB/WDS, 2008 WL 5991009, at *10 (D.N.M. Aug. 27, 2008) (dismissing complaint under *Younger* abstention due to ongoing state-court domestic violence, divorce, and custody proceedings).

Accordingly, it appears that the Court should abstain from addressing the substance of the complaint under the *Younger* abstention and *Rooker-Feldman* doctrines.

## III. ORDER TO SHOW CAUSE

Accordingly, IT IS ORDERED as follows:

1. Within thirty days from the date of issuance of this order, Plaintiff shall show cause why this action should not be dismissed pursuant to the *Younger* abstention and *Rooker-Feldman* doctrines.
2. Plaintiff is advised that failure to respond to this order may result in the dismissal of this case.
3. The Clerk of Court is directed to issue <u>only</u> the Court's standard *pro se* informational order, which provides general information helpful to Plaintiff in connection with this case.

IT IS SO ORDERED.

Dated:   **February 1, 2024**         /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE